IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES A. METCALF, )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:19CV842–HEH
)
GEO GROUP, INC., *et al.*, )
)
    Defendants. )

## MEMORANDUM OPINION
### (Granting Motion to Dismiss in Part and Denying in Part)

James A. Metcalf, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil rights action. In his Particularized Complaint ("Complaint," ECF No. 10),[1] Metcalf alleges that, while he was an inmate at the Lawrenceville Correctional Center ("LVCC"), Defendants[2] provided inadequate medical care for his hearing loss and tinnitus. Defendants Herrick and Scott have filed a Motion to Dismiss. (ECF No. 29.) Metcalf has responded. For the reasons set forth below, the Motion to Dismiss will be granted in part and denied in part.

---

[1] The Court employs the numbering and pagination assigned by the CM/ECF docketing system for the citations to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization in the parties' submissions and removes emphasis, unless otherwise noted.

[2] Metcalf names as defendants: GEO Group, Inc. "a private prison corporation that holds a contract with [the Virginia Department of Corrections ("VADOC")] for the operation and management of LVCC;" Michael Breckon, a facility administrator at LVCC; Courtney Harris, a health services administrator at LVCC; Annette Schwendinger, a nurse at LVCC; Stephen Herrick, the Director of Health Services for VADOC; and, N. H. Scott, the Deputy Director for Administration for VADOC. (ECF No. 10, at 3–4.) Defendant Harris was previously dismissed from this action because Metcalf failed to serve her in a timely manner. (*See* ECF Nos. 65, 66).

## I. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (second alteration in original). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

2

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). For a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF PERTINENT ALLEGATIONS AND CLAIMS

In his Complaint, under the section entitled "STATEMENT OF FACTS," Metcalf alleges the following facts relevant to the present Motion to Dismiss:[3]

> In December 2018, Dr. Calhoun, LVCC Facility Physician, evaluated the Plaintiff for severe ringing in his left ear and slight ringing in his right ear, which had been ongoing for over six (6) months.
> Dr. Calhoun diagnosed the Plaintiff with tinnitus and stated that there was nothing that he could do or prescribe to help relieve the Plaintiff's condition.
> On December 17, 2018, Dr. Calhoun submitted a request for Health Services Consultation for the Plaintiff to be seen by audiology.
> On January 25, 2019, the Plaintiff was evaluated and tested by Chesapeake Bay, Ear, Nose and Throat (ENT) Clinic in Franklin, VA.

---

[3] The Court omits paragraph numbers and references to secondary sources and case authority in citations to Metcalf's Complaint, unless otherwise noted.

3

>        An audiogram by Chesapeake Bay ENT revealed that the Plaintiff has mild to moderate, bilateral hearing loss in conjunction with tinnitus.
>        Dr. Ting Gao and Dr. Meakin recommended hearing aids to treat the Plaintiff's hearing loss and tinnitus.
>        A two-week follow up was scheduled for hearing aids fitting and measurements.
>        In March 2019, after not being seen by LVCC Medical or Chesapeake ENT, the Plaintiff submitted an Inmate Request form to LVCC Medical inquiring about the follow-up appointment.
>        LVCC Medical replied "you are scheduled for sick call."
>        On April 13, 2019, after not being seen by LVCC Medical for the scheduled "sick call," the Plaintiff submitted an Informal Complaint (LVCC-19-INF-1309) stating he had not been seen by LVCC Medical or Chesapeake ENT.
>        On April 30, 2019, Plaintiff received a reply to the Informal Complaint by Defendant Harris, stating "you do not have a follow-up appointment," and "you do not require hearing aids."
>        On April 30, 2019, Plaintiff submitted Offender Regular Grievance (LVCC-19-REG-00122) and included a copy of the Health Services Request for Consultation & Report and a copy of the audiogram showing the audiologist's prescription for hearing aids.
>        On June 20, 2019, Defendant Breckon concluded that there was no violation of policy and returned the regular grievance "UNFOUNDED," thereby acknowledging the grievance but denying it to be without merit.
>        On June 20, 2019, the Plaintiff forwarded the regular grievance to the Level II (Health Services Director) for an appeal.
>        On July 8, 2019, the Health Services Director, Defendant Herrick denied the appeal declaring the Plaintiff's grievance "UNFOUNDED." Referencing LVCC-19-REG-0120 and O[perating]P[rocedure] 750.3.
>
>        . . . .
>
>        On August 29, 2019, an Informal Complaint was logged on the Plaintiff's behalf . . . .
>        Informal Complaint #03449, was received by LVCC Grievance Department, logged and forwarded to the Plaintiff, with the response "per medical you were evaluated on 7/26/2019 and a referral to an ENT specialist was submitted you will have an appointment in the near future."
>
>        . . . .
>
>        On October 3, 2019, the Plaintiff was transported to Chesapeake ENT where he was fitted for hearing aids.

4

> The audiology technician, Ms. Cindy Potter, stated that without hearing aids the Plaintiff's condition would worsen and that she would prepare the purchase order (P.O.) to be forwarded to LVCC for approval, upon receipt of P.O. approval she would order the hearing aids.
> On November 1, 2019, the Plaintiff submitted a request for Reasonable Accommodations to LVCC's ADA Coordinator, (Americans with Disability Act), Ms. B. Bullock requesting hearing aids . . . .
> On December 10, 2019, Ms. Bullock denied the request stating "you have been deemed appropriate care."
> On February 10, 2020, the Plaintiff spoke with the new HSA, Mr. Duran concerning the hearing aids and presented the same evidence herein.
> After a review of the evidence, Mr. Duran inquired about the purchase order from Chesapeake ENT. A phone call to Chesapeake ENT was made and purchase order was re–submitted.
> On March 3, 2020, the Plaintiff submitted a second Request for Reasonable Accommodations to Ms. Bullock requesting hearing aids and disclosing that his hearing impairment meets the threshold to be considered a disability.
> On March 6, 2020, Ms. Bullock neither denies the request or grants it, and states, "This has been addressed."
> On March 9, 2020, the Plaintiff submits Informal Complaint (LVCC–20–INF–00890) grieving the denial for reasonable accommodation. In accordance with Operating Procedure 801.3 (Managing Offenders with Disabilities), reasonable accommodations should be granted to offenders with disabilities.
> On March 11, 2020, the Plaintiff was transported to Chesapeake Bay ENT and issued hearing aids and a two–week follow up would be necessary for program adjustments to the hearing aids.
> On March 18, 2020, Ms. Bullock replies to Informal Complaint #00890 that she is following O.P. 801.3 and that "you now have your hearing aids."
>
> . . . .
>
> The Plaintiff has yet to be referred to the Facility Physician for examination and classifications as an offender with a disability in accordance w/ VADOC policy.
> Plaintiff has not been seen by any LVCC medical staff for a follow up concerning his hearing impairment diagnosis and/or treatment for his tinnitus.

(ECF No. 10 at 5–14.)

5

In the subsequent section of his Complaint, entitled, "EIGHTH AMENDMENT VIOLATION," Metcalf alleges that:

> The Plaintiff's Eighth Amendment[4] rights, under the United States Constitution were violated by denying the Plaintiff medical care, through deliberate indifference for a serious medical need, for over (13) thirteen months, the Plaintiff was denied hearing aids.
>
> . . . .
>
> Defendant Herrick is liable under this legal theory because as the Health Services Director for VADOC, he is legally responsible for the health care of inmates in VADOC's prisons, ensuring that policies are being followed and that inmates' constitutional rights to adequate medical care are not being violated.
> Defendant Herrick is legally responsible for the faults and misconduct of employees of VADOC and those who are contracted by VADOC to manage and operate prison facilities in the Commonwealth of Virginia under the doctrine of *respondeat superior*.
> Defendant Herrick is vicariously liable due to the misconduct of defendants Schwendinger, Harris, Breckon, and GEO, who are employees of VADOC under contract to operate and manage LVCC, who also denied the Plaintiff hearing aids and adequate medical care for a serious medical need resulting in continued constitutional injury and unnecessary and wanton infliction of pain.
> Defendant's Herrick's denial of the Plaintiff's grievance appeal, by concurring with the Level I response, determining the grievance to be "UNFOUNDED" and there was "no violation of policy/procedure," demonstrates his culpability in the violation of the Plaintiff's constitutional rights by authorizing the denial of adequate medical care for a serious medical need, exhibiting deliberate indifference for (1) known serious medical need, [and] (2) the failure to respond reasonably to the need.
> Defendant Herrick's failure to respond appropriately to the Plaintiff's grievance authorized the continued constitutional injury, further physical damage to Plaintiff's hearing condition, and the unnecessary and wanton infliction of pain.
> Defendant Herrick's denial referencing O.P. 750.3, which states in section IV.B.5, "Generally, offenders who can hear well enough to carry on a conversation will not be issued hearing aids by the DOC," is speculative based on his opinion that the Plaintiff can hear well enough to carry on a

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

6

> conversation without evidence to prove so, further denying adequate medical care for the Plaintiff.
>
> Defendant Herrick's reference to O.P. 750.3 to deny Plaintiff's appeal and grievance holds no merit because O.P. 750.3 section IV.B.5, as written and applied facially violates the Plaintiff's rights by stipulating that offenders with hearing impairments must be so severely impaired that they can not carry on a conversation, thus rendering hearing aids useless to ameliorate an impairment, further denying medical treatment for hearing impairments that would be ameliorated by such devices. This denial causes prolonged suffering and further injury.
>
> Defendant Herrick's reference to O.P. 750.3 to deny the Plaintiff's appeal and grievance holds no merit because O.P. 750.3 section IV.B.5, as written . . . gives rise to cause a deliberate indifference among offenders with hearing impairments, causing further injury.
>
> Defendant N. H. Scott is liable under this legal theory because as the Deputy Director for Administration for the VADOC, Scott signed [and] implement[ed] O.P. 750.3 into effect on 6/27/17, which section IV.B.5 as written and applied to the Plaintiff and facility to offenders with hearing impairments, causes rise to deliberate indifference to offenders with serious medical need, preventing these offenders with hearing impairments from receiving adequate medical care.
>
> . . . .
>
> . . . [T]he plaintiff's hearing impairment meets the threshold to be considered severe enough to qualify him as disabled.
>
> . . . .
>
> The Plaintiff's hearing impairment poses a risk to his safety because he could have trouble hearing a fire alarm, or other alarms, responding to commands by guards and reacting to fights or threats from other prisoners, rending the Plaintiff exceedingly vulnerable to danger and harm from his unperceived surroundings.

(*Id.* at 15, 21–26.)

Finally, in the section of his Complaint, entitled, "TITLE II, ADA, 1990 VIOLATION," Metcalf alleges that:

> The Plaintiff's rights under Title II of the Americans with Disabilities Act [the ("ADA")] of 1990 (42 U.S.C. § 12131, *et seq.*) were violated by the denial of adequate medical care for the Plaintiff's

7

documented disability, required for prisoners with disabilities and by the failure to provide the Plaintiff with medical prosthesis and/or treatment to ameliorate his hearing impairment and tinnitus.

. . . .

Defendant Herrick is liable under this legal theory, Plaintiff re–alleges and incorporates [the prior allegations contained in his Complaint].
Defendant N. H. Scott is liable under this legal theory, Plaintiff re–alleges and incorporates [the prior allegations contained in his Complaint].

(*Id.* at 27–28.)

The Court construes Metcalf's allegations to raise the following claims for relief:

| | |
|---|---|
| Claim One | Defendant Schwendinger displayed deliberate indifference to Metcalf's serious medical need in violation of the Eighth Amendment by denying him hearing aids, despite an outside audiologist's recommendation to the contrary. (*Id.* at 15–17.) |
| Claim Two | Defendant Breckon displayed deliberate indifference to Metcalf's serious medical need in violation of the Eighth Amendment by: (a) determining that his grievance was unfounded; and (b) failing to supervise his subordinates at LVCC. (*Id.* at 15, 18–20.) |
| Claim Three | Defendant GEO "is legally responsible for the faults and misconduct of their employees under the doctrine of *respondeat superior*," and "is vicariously liable due to the [alleged Eighth Amendment violations] of Defendants Schwendinger, Harris, and, Breckon." (*Id.* at 15, 20–21.) |
| Claim Four | Defendant Herrick: (a) displayed deliberate indifference to Metcalf's serious medical need in violation of the Eighth Amendment by affirming the denial of Metcalf's grievance; and (b) "is legally responsible for the [deliberate indifference] of employees of VADOC and those who are contracted by VADOC . . . under the doctrine of *respondeat superior*." (*Id.* at 15, 21–24.) |
| Claim Five | Defendant Scott displayed deliberate indifference to Metcalf's serious medical need in violation of the Eighth |

8

|   |   |
|---|---|
|   | Amendment because she "signed . . . O.P. 750.3 into effect on 6/27/17." (*Id.* at 15, 24.) |
| Claim Six | Defendant Schwendinger failed to accommodate Metcalf's disability in violation of Title II of the ADA by denying him hearing aids, despite an outside audiologist's recommendation to the contrary. (*Id.* at 15–17, 27.) |
| Claim Seven | Defendant Breckon failed to accommodate Metcalf's disability in violation of Title II of the ADA by: (a) determining that his grievance was unfounded; and, (b) failing to supervise his subordinates at LVCC. (*Id.* at 15, 18–20, 27.) |
| Claim Eight | Defendant GEO failed to accommodate Metcalf's disability in violation of Title II of the ADA through the actions of its employees, Defendants Schwendinger, Harris, and, Breckon, for whom it "is legally responsible . . . under the doctrine of *respondeat superior*." (*Id.* at 15, 20–21, 27.) |
| Claim Nine | Defendant Herrick failed to accommodate Metcalf's disability in violation of Title II of the ADA: (a) by affirming the denial of Metcalf's grievance; and (b) through the "faults and misconduct of employees of VADOC and those who are contracted by VADOC . . . under the doctrine of *respondeat superior*." (*Id.* at 15, 21–24, 27–28.) |
| Claim Ten | Defendant Scott failed to accommodate Metcalf's disability in violation of Title II of the ADA because she "signed . . . O.P. 750.3 into effect on 6/27/17." (*Id.* at 15, 24, 27–28.)[5] |

### III. ANALYSIS

#### A. Eighth Amendment Claims

To state an Eighth Amendment claim, an inmate must allege facts that indicate

"(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and

(2) that subjectively the prison officials acted with a 'sufficiently culpable state of

---

[5] Defendants GEO, Breckon, and Schwendinger have filed Answers. (*See* ECF Nos. 39, 58.) Accordingly, Claims One, Two, Three, Six, Seven, and Eight are not presently before the Court and will not be addressed herein.

9

mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate."

10

*Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### 1. Serious Medical Need

The failure to provide basic corrective devices may amount to deliberate indifference to a serious medical need. *See Newman v. Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974) (noting that a prison's alleged failure to provide "eyeglasses and prosthetic devices" may contribute to an Eighth Amendment claim). The United States Court of Appeals for the Fourth Circuit has held that, "under [the] appropriate circumstances the refusal to supply a hearing aid to a convict could constitute deliberate indifference to a serious medical need." *Large v. Wash. Cty. Det. Ctr.*, No. 90–6610,

11

1990 WL 153978, at *2 (4th Cir. Oct. 16, 1990). However, "not all hearing loss amounts to a serious medical condition." *Gilmore v. Hodges*, 738 F.3d 266, 276 (11th Cir. 2013). Indeed, "if a plaintiff can carry on a normal conversation and hear and follow directions without the use of a hearing aid, a court would be hard pressed to classify the plaintiff's impairment as a serious medical need." *Id.* at 276–277 (citations and internal quotation marks omitted).

Defendants state that Metcalf "has not established his hearing loss as a serious medical need." (ECF No. 30 at 5.) Metcalf alleges that he "has mild to moderate bilateral hearing loss in conjunction with tinnitus," which results in "severe ringing in his left ear and slight ringing in his right ear." (ECF No. 10 at 5–6.) Metcalf further alleges "without the hearing aids [his] condition would worsen." (*Id.* at 11.) For purposes of the present Motion to Dismiss, with all inferences flowing to Metcalf, the Court will assume, without deciding, that the facts alleged are sufficient to indicate that Metcalf has a serious medical need. *Cf. Gilmore*, 738 F.3d at 275 (holding that the denial of a hearing aid to an inmate could form the basis of an Eighth Amendment claim because "[t]he ability to hear is a basic human need").

### 2. Defendant Herrick (Claim Four)

In Claim Four, Metcalf alleges that Defendant Herrick: (a) displayed deliberate indifference to Metcalf's serious medical need in violation of the Eighth Amendment by affirming the denial of Metcalf's grievance; and (b) "is legally responsible for the [deliberate indifference] of employees of VADOC and those who are contracted by VADOC . . . under the doctrine of *respondeat superior*." (ECF No. 10 at 15, 21–24.)

12

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). However, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citations omitted). Instead, the "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Thus, to survive a motion to dismiss, a plaintiff must "affirmatively [allege] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright*, 766 F.2d at 850 (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

To the extent Metcalf seeks to hold Defendant Herrick liable simply for his involvement in the grievance review process, Metcalf's conclusory allegations fail to state a claim. As an initial matter, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Because Metcalf enjoys no constitutional right to participate in grievance proceedings, his allegation that Defendant Herrick improperly upheld his grievance on appeal is legally frivolous. *See Banks v. Nagle*,

Nos. 3:07CV419–HEH, 3:09CV14, 2009 WL 1209031, at *3 (E.D. Va. May 1, 2009) (citation omitted); *see also DePaola v. Ray*, No. 7:12CV00139, 2013 WL4451236, at *8 (W.D. Va. July 22, 2013) (citation omitted) ("[A] supervisor's after–the–fact denial of a grievance falls short of establishing § 1983 liability."). Indeed, simply "[r]uling against a prisoner does not cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007); *cf. Chamberlain v. Clarke*, No. 7:14-cv-00013, 2014 WL 2154183, *3 (W.D. Va. May 22, 2014) (noting that an inmate's "dissatisfaction with [a prison official's] responses to his grievances is a non-starter").

Additionally, Metcalf merely alleges that Defendant Herrick upheld the grievance based on a policy of the VADOC. An inmate may establish that a prison administrator is liable under § 1983 for a grievance or letter if he alleges facts that indicate "that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, Metcalf must allege that, Defendant Herrick "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Metcalf indicates that on one occasion, Defendant Herrick upheld the decision to not provide Metcalf with hearing aids in conformance with O.P. 750.3. Metcalf essentially faults Herrick for relying on a VADOC policy and finding that there was no violation of that policy. However, Metcalf's allegations fall short of permitting the conclusion that his one grievance appeal placed Defendant Herrick on

sufficient notice of an excessive risk of harm to Metcalf's health or safety by simply following a VADOC policy. *See id.* Accordingly, Claim Four (a) will be dismissed without prejudice.

Moreover, in Claim Four (b), it is apparent that Metcalf seeks to hold Defendant Herrick liable under a theory of *respondeat superior* for the actions of other individuals. (ECF No. 10 at 21–22.) Insofar as Metcalf's Eighth Amendment claim rests upon this theory, it clearly runs afoul of established precedent. *See Iqbal*, 556 U.S. at 676. Accordingly, Claim Four (b) will be dismissed with prejudice.

### 3. Defendant Scott (Claim Five)

In Claim Five, Metcalf alleges that Defendant Scott is liable because she "signed . . . O.P. 750.3 into effect on 6/27/17." (ECF No. 10 at 24.) According to Metcalf, this policy states that, "[g]enerally, offenders who can hear well enough to carry on a conversation will not be issued hearing aids by the DOC." (*Id.* at 23–24.) Metcalf maintains that O.P. 750.3 gives "rise to deliberate indifference," and prevents offenders, such as himself, "from receiving adequate medical care." (*Id.* at 24.) There are four ways in which an unconstitutional policy or custom can arise:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks and citation omitted). To state a claim based upon an policy or custom, a plaintiff must allege that, at the time of his injury, the defendant had a "an official policy or custom of operating and

15

maintaining the [prison] in a way that resulted in unconstitutional conditions," which both "reflects a deliberate indifference to [the plaintiff's] Eighth Amendment rights," and "caused, or contributed to cause [the plaintiff's] injuries." *Woodson v. City of Richmond*, 88 F. Supp. 3d 551, 563 (E.D. Va. 2015) (citations omitted).

Defendant Scott's terse arguments for dismissal fail to adequately explain why this claim should be dismissed at this juncture. For example, according to Metcalf, in the absence of hearing aids, his hearing would continue to deteriorate. Therefore, the outside audiologist recommended that Metcalf be provided with hearing aids. O.P. 750.3, the policy implemented by Defendant Scott, seems to allow for this recommendation to be ignored because Metcalf's hearing had not yet deteriorated to the point where he could not hear conversations. Defendant Scott fails to explain why this alleged indifference to Metcalf's future hearing loss passes constitutional muster. Accordingly, the Motion to Dismiss will be denied as to Claim Five.

### B. ADA Claims

In Claims Nine and Ten, Metcalf alleges that Defendants Herrick and Scott violated his rights under Title II of the ADA by failing to accommodate his disability. (ECF No. 10 at 27–28.) Metcalf has sued Defendants Herrick and Scott in both their individual capacity and their official capacity. (*See* ECF No. 10 at 4.) Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A state prison is a "public entity" for purposes of Title II of

the ADA. *See United States v. Georgia*, 546 U.S. 151, 154 (2006).[6] The Fourth Circuit has held that:

> In general, a plaintiff seeking recovery for a violation of [the ADA] must allege that (1) []he has a disability, (2) []he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) []he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of h[is] disability.

*Constantine v. George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

As an initial matter, Defendants Herrick and Scott argue that Metcalf "cannot sue the[m] individual[ly] under the ADA." (ECF No. 30 at 4.) To the extent that they mean Metcalf cannot sue them in their individual capacities, the Court concurs. "Title II of the ADA . . . [does not] provide[] for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *see also Barnes v. Young*, 565 F. App'x 272, 273 (4th Cir. 2014) (citation omitted). Thus, Claim Nine and Claim Ten will be dismissed insofar as they are styled as individual capacity claims against Defendants Herrick and Scott.

The Motion to Dismiss will be denied, however, to the extent that Metcalf has sued Defendants Herrick and Scott in their official capacity. Defendants concede that "[s]tates are obligated to make 'reasonable modifications' to enable [a] disabled person to receive the services or participate in programs or activities" offered by said entity. (ECF No. 30 at 3.) Metcalf alleges that "[t]he audiogram demonstrates that [his] hearing

---

[6] In *Georgia*, the Supreme Court held that Title II of the ADA constituted a valid abrogation of a state's sovereign immunity, and that it "creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." 546 U.S. at 159 (emphasis in original).

17

impairment meets the threshold . . . to qualify him as disabled." (ECF No. 10 at 25.) He further alleges that his hearing impairment interferes with his ability to "hear[] a fire alarm or other alarms, [and to] respond[] to commands by guards." (*Id.* at 26.) For purposes of the Motion to Dismiss, the Court assumes, without deciding, that a fire alarm, other institutional alarm, or a command from a guard constitutes a "service, program, or activity" LVCC provides. Further, the Court liberally construes Metcalf to allege that he is being excluded from or denied the benefit of these services on the basis of his disability due to the Defendants' failure to provide him with hearing aids. As such, in Claims Nine and Ten, Metcalf has nominally pled claims for violations of Title II of the ADA, which are sufficient to survive at this stage.[7]

## IV. CONCLUSION

For the reasons stated above, the Motion to Dismiss will be granted in part and denied in part. Claim Four (a) will be dismissed without prejudice. Claim Four (b) will be dismissed with prejudice. Claims Nine and Ten will be dismissed insofar as they are styled as individual capacity claims. However, Claims Nine and Ten will remain, insofar as they are styled as official capacity claims.

Any party wishing to file a Motion for Summary Judgment must do so within sixty (60) days of the date of entry hereof.

---

[7] The parties do not address whether the conduct alleged by Metcalf "*actually* violates the Fourteenth Amendment." *See Georgia*, 546 U.S. at 159 (emphasis in original). Thus, the Court does not resolve that issue at this time.

18

An appropriate Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: June 10, 2021
Richmond, Virginia