**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| JAMES A. METCALF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:19CV842–HEH |
| | ) | |
| GEO GROUP, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**
**(Granting Motions for Summary Judgment)**

James A. Metcalf, a Virginia inmate proceeding *pro se* and *in forma pauperis*,

filed this civil rights action.[1]  In his Particularized Complaint ("Complaint," ECF No. 10),

Metcalf raises the following claims for relief:[2]

| | |
|---|---|
| Claim One | Defendant Schwendinger displayed deliberate indifference to Metcalf's serious medical need in violation of the Eighth Amendment by denying him hearing aids, despite an outside audiologist's recommendation to the contrary.  (*Id.* at 15–17.) |
| Claim Two | Defendant Breckon displayed deliberate indifference to Metcalf's serious medical need in violation of the Eighth Amendment by:  (a) determining that his grievance was unfounded; and, (b) failing to supervise his subordinates at LVCC.  (*Id.* at 15, 18–20.) |

---

[1] Metcalf names as defendants:  GEO Group, Inc. ("GEO"), "a private prison corporation that holds a contract with [the Virginia Department of Corrections ("VADOC")] for the operation . . . of [Lawrenceville Correctional Center ("LVCC")];" Michael Breckon, a facility administrator at LVCC; Courtney Harris, a health services administrator at LVCC; Annette Schwendinger, a nurse at LVCC; Stephen Herrick, the Director of Health Services for VADOC; and, N. H. Scott, the Deputy Director for Administration for VADOC.  (ECF No. 10, at 3–4.)  Defendant Harris was dismissed from this action because Metcalf failed to timely serve her.  (ECF Nos. 65, 66.)

[2] The Court employs the pagination assigned by the CM/ECF docketing system for the citations to the parties' submissions.  The Court corrects the spelling, punctuation, and capitalization and omits emphasis and symbols in quotations from the parties' submissions.

Claim Three          Defendant GEO "is legally responsible for the faults and
                     misconduct of their employees under the doctrine of
                     *respondeat superior*," and "is vicariously liable due to the
                     [alleged Eighth Amendment violations] of Defendants
                     Schwendinger, Harris, and, Breckon." (*Id*. at 15, 20–21.)

Claim Four           Defendant Herrick:  (a) displayed deliberate indifference to
                     Metcalf's serious medical need in violation of the Eighth
                     Amendment by affirming the denial of Metcalf's grievance;
                     and, (b) "is legally responsible for the [deliberate
                     indifference] of employees of VADOC and those who are
                     contracted by VADOC . . . under the doctrine of *respondeat
                     superior*." (*Id*. at 15, 21–24.)

Claim Five           Defendant Scott displayed deliberate indifference to
                     Metcalf's serious medical need in violation of the Eighth
                     Amendment because she "signed . . . O.P. 750.3 into effect on
                     6/27/17." (*Id*. at 15, 24.)

Claim Six            Defendant Schwendinger failed to accommodate Metcalf's
                     disability in violation of Title II of the ADA by denying him
                     hearing aids, despite an outside audiologist's recommendation
                     to the contrary. (*Id*. at 15–17, 27.)

Claim Seven          Defendant Breckon failed to accommodate Metcalf's
                     disability in violation of Title II of the ADA by:
                     (a) determining that his grievance was unfounded; and, (b)
                     failing to supervise his subordinates at LVCC. (*Id*. 15, 18–
                     20, 27.)

Claim Eight          Defendant GEO failed to accommodate Metcalf's disability in
                     violation of Title II of the ADA through the actions of its
                     employees, Defendants Schwendinger, Harris, and, Breckon,
                     for whom it "is legally responsible . . . under the doctrine of
                     *respondeat superior*." (*Id*. at 15, 20–21, 27.)

Claim Nine           Defendant Herrick failed to accommodate Metcalf's disability
                     in violation of Title II of the ADA: (a) by affirming the denial
                     of Metcalf's grievance; and, (b) through the "faults and
                     misconduct of employees of VADOC and those who are
                     contracted by VADOC . . . under the doctrine of *respondeat
                     superior*." (*Id*. at 15, 21–24, 27–28.)

2

| Claim Ten | Defendant Scott failed to accommodate Metcalf's disability in violation of Title II of the ADA because she "signed . . . O.P. 750.3 into effect on 6/27/17." (*Id.* at 15, 24, 27–28.)[3] |

The matter is before the Court on three Motions for Summary Judgment filed by the Defendants. Defendants GEO and Breckon filed one Motion for Summary Judgment (the "GEO Motion," ECF No. 69), Defendant Schwendinger filed a second Motion for Summary Judgment (the "Schwendinger Motion," ECF No. 76), and Defendants Herrick and Scott filed a third Motion for Summary Judgment (the "Herrick/Scott Motion," ECF No. 98). Metcalf has responded to each Motion for Summary Judgment. (ECF Nos. 77, 83, 101.) For the reasons stated below, all three Motions for Summary Judgment (ECF Nos. 69, 76, 98) will be granted.

## I. STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

"Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted).

---

[3] By Memorandum Opinion and Order entered on June 10, 2021, the Court dismissed Claims Four (a) and (b) against Defendant Herrick. (*See* ECF Nos. 88, 89.) At that time, the Court also dismissed Claims Nine (a), Nine (b), and Ten against Defendants Herrick and Scott, insofar as they were styled as individual capacity claims. (*Id.*)

When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "*scintilla* of evidence" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of their Motion for Summary Judgment, Defendants GEO and Breckon have submitted: (1) the declaration of Sharon King, a Health Services Administrator at LVCC ("King Declaration," ECF No. 70–1); and, (2) seventy-three pages of Metcalf's VADOC medical records (ECF No. 70–2). In support of her Motion for Summary Judgment, Defendant Schwendinger has submitted: (1) twenty-five pages of Metcalf's VADOC medical records (ECF No. 77–1); and, (2) her own affidavit ("Schwendinger

4

Affidavit," ECF No. 77–2). In Support of their Motion for Summary Judgment,

Defendants Herrick and Scott have submitted: (1) the affidavit of Mark Amonette, M.D.,

the Chief Physician for the VADOC ("Amonette Affidavit," ECF No. 99–1); (2)

Defendant Herrick's affidavit ("Herrick Affidavit," ECF No. 99–2); and, (3) the affidavit

of R. Stigall, a Corrections Counselor at LVCC ("Stigall Affidavit," ECF No. 99–3).

At this stage, the Court is tasked with assessing whether Metcalf "has proffered

sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof

of his claim[s] at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)

(emphasis added). As a general rule, a non-movant must respond to a motion for

summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at

324. For all practical purposes, a verified complaint is "the equivalent of an opposing

affidavit for summary judgment purposes." *World Fuel Servs. Trading, DMCC v. Hebei

Prince Shipping Co.*, 783 F.3d 507, 516 (4th Cir. 2015) (internal quotation marks

omitted) (citation omitted). However, Metcalf's Complaint was not properly notarized,[4]

nor were its contents properly sworn to under penalty of perjury.

---

[4] A document can be notarized in two primary ways. An acknowledgment is used to verify a
signature and to prove that an instrument was executed by the person signing it, whereas a jurat
is evidence that a person has sworn to the truth of the contents of the document. In an
acknowledgment, unlike a jurat, the affiant does not swear under oath nor make statements under
penalty of perjury. *See Strong v. Johnson*, 495 F.3d 134, 140 (4th Cir. 2007) (explaining that
jurat uses words "subscribed and sworn" and demonstrates an oath was rendered); *Goode v.
Gray*, No. 3:07cv189, 2009 WL 255829, at *2 n.6 (E.D. Va. Feb. 3, 2009). While Metcalf's
Complaint does bear a notary's stamp, the notary did not sign the Complaint or include any
language to indicate that an oath was administered, or even that Metcalf had acknowledged his
signature to the notary. In any event, even if a bare notary's stamp could be construed as an
acknowledgment, as discussed herein, the "verification" language that Metcalf included in his
Complaint is insufficient to transform it into admissible evidence.

Under the signature block in his Complaint, Metcalf included a statement that he

called a "verification," which reads:

> I have read the foregoing Complaint and hereby verify that the matters
> alleged therein are true, except as to matters alleged on information and
> belief, and as to those, I believe them to be true. I certify under penalty of
> perjury that the foregoing is true and correct.

(ECF No. 10, at 32.) Metcalf's "verification" is virtually identical to one that this Court

previously rejected in *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, *2–3

(E.D. Va. June 1, 2011), and is substantially similar to one that the United States Court of

Appeals for the Fourth Circuit found to be lacking in *Walker v. Tyler Cnty. Comm'n*, 11

F. App'x 270, 274 (4th Cir. 2001).[5] As such, the Court must consider the contents of

Metcalf's Complaint as "mere pleading allegations." *Hogge*, 2011 WL 2161100, at *3

(quoting *Walker*, 11 F. App'x at 274). Consequently, the Complaint fails to constitute

admissible evidence. *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

The responses that Metcalf filed to the GEO, Schwendinger, and Herrick/Scott

Motions are similarly deficient. As an initial matter, the Court warned Metcalf that:

> [T]he Court will not consider as evidence in opposition to any motion for
> summary judgment a memorandum of law and facts that is sworn to under
> penalty of perjury. Rather, any verified allegations must be set forth in a
> separate document titled "Affidavit" or "Sworn Statement," and reflect that
> the sworn statements of fact are made on personal knowledge and that the
> affiant is competent to testify on the matters stated therein. *See* Fed. R.
> Civ. P. 56(c)(4).

---

[5] Where a verification is made "upon information and belief," it "is insufficient for the purposes
of opposing a motion for summary judgment because such verification avoids the possibility of
perjury." *Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991); *see also Causey v. Balog*, 162
F.3d 795, 803 n.4 (4th Cir. 1998) (citations omitted) ("Because [the court] cannot assess whether
[the plaintiff] had first-hand knowledge of [the alleged] facts or whether he is competent to
testify to them, [the court] cannot consider them in [its summary judgment] review.").

6

(ECF No. 14, at 2.) Metcalf did not comply with this directive in responding to the Herrick/Scott Motion.

In that instance, Metcalf filed a "MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS HERRICK AND SCOTT'S MOTION FOR SUMMARY JUDGMENT." (ECF. No. 101.) Metcalf's response does not include a "*separate document* titled 'Affidavit' or 'Sworn Statement'" (ECF No. 14, at 2 (emphasis added)), nor does it include a jurat, or any other indication that it was sworn to before a notary. Even if the Court were to overlook Metcalf's failure to comply with its orders, Metcalf's response brief is not sworn to under penalty of perjury. Instead, Metcalf attempted to verify his response brief using the same flawed language that he utilized in attempting to verify his Complaint.[6] Consequently, Metcalf's response to the Herrick/Scott Motion fails to constitute admissible evidence. *White*, 366 F.3d at 300.

With regard to the GEO and Schwendinger Motions, Metcalf also failed to properly swear to the contents of his responsive submissions under penalty of perjury. Unlike his response to the Herrick/Scott Motion, Metcalf responded to each of the GEO and Schwendinger Motions by filing both a response brief (*see* ECF Nos. 75, 83) and a separate document that he called an "Affidavit of James A. Metcalf" (*see* ECF Nos. 75–1, 83–1). The response briefs contain the same flawed verification language that Metcalf included in his Complaint and his response to the Herrick/Scott Motion. (ECF Nos. 75,

---

[6] Metcalf also submitted a document in response to the Herrick/Scott Motion that he called "STATEMENT OF GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS HERRICK AND SCOTT'S MOTION FOR SUMMARY JUDGMENT." (ECF No. 101–1.) This document contains the same faulty verification language as Metcalf's other submissions (*id.* at 6–7), and is not admissible evidence.

7

at 46; 83, at 39.)  Further, neither of Metcalf's "affidavits" contain any factual statements

of their own.  (*See* ECF Nos. 75–1; 83–1.)  Rather, in each "affidavit," Metcalf simply

identifies himself, references his corresponding response brief and "declare[s] that all

statements and responses which [he] made [therein] . . . are true and correct to [his]

knowledge, except as to matters therein stated to be alleged on information and belief,

and as to those matters, [he] believe[s] it to be true."  (ECF Nos. 75–1, at 1; 83–1, at 1.)

Notwithstanding the name that Metcalf ascribed to his "affidavits," these

documents are not sworn statements within the meaning of Rule 56.  Metcalf's continued

use of the flawed "upon information and belief" language discussed above once again

renders his submissions nothing more than "mere pleading allegations."  *Hogge*, 2011

WL 2161100, at *3 (quoting *Walker*, 11 F. App'x at 274).  Consequently, Metcalf's

responses to the GEO and Schwendinger Motions do not constitute admissible evidence.

*White*, 366 F.3d at 300.[7]

---

[7] It should be noted that in his "affidavits" in response to the GEO and Schwendinger Motions,
Metcalf hand wrote the words "[s]worn to before me this _____ day of ____, 2021," under his
own signature. (ECF Nos. 75–1, 83–1.)  In each instance, a notary signed and dated in the space
provided and affixed a stamp. (*Id.*)  At first glance, it appears that Metcalf was attempting to
insert a jurat into his "affidavits."  However, a true jurat uses the words "subscribed and sworn to
before me" to demonstrate that an oath was rendered.  *See Strong*, 495 F.3d at 140.  Because
Metcalf did not follow the ordinary form in either of these "affidavits," it is unclear whether an
oath was administered or not.  However, even if the Court were to assume, *arguendo*, that an
oath was administered in these instances, the "affidavits" in question do not contain any factual
statements for Metcalf to subscribe and swear to.  As discussed above, the "affidavits" in
question merely identify Metcalf, reference his response briefs, and attempt to verify said briefs
using qualified language, which the Court has already found to be insufficient.  Thus, even if the
Court were to find that these "affidavits" contained a jurat, the "affidavits" themselves do not
contain any sworn testimony upon which Metcalf could oppose summary judgment.  Moreover,
in light of the "upon information and belief" verification language that Metcalf used, they could
not transform the factual allegations contained in Metcalf's unverified response briefs, which are
entirely separate documents, into admissible evidence.

Finally, the Court may not consider the unauthenticated exhibits that Metcalf attached to his Complaint or any of his response briefs. *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) (citation omitted) (observing that "[i]t is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment"); *Campbell v. Verizon Va., Inc.*, 812 F. Supp. 2d 748, 750 (E.D. Va. 2011) (quoting *Orsi*, 999 F.2d at 92) ("For documents to be considered, they 'must be authenticated by and attached to an affidavit' that meets the strictures of Rule 56.").

As neither Metcalf's Complaint, nor his responses to the GEO, Schwendinger, and Herrick/Scott Motions, nor any of the attachments affixed thereto, constitute admissible evidence for purposes of summary judgment, Metcalf has failed to cite to any evidence that he wishes the Court to consider in opposition. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment). Metcalf's failure to present any admissible evidence to counter the GEO, Schwendinger, or Herrick/Scott Motions permits the Court to rely solely on said submissions in deciding the issue of summary judgment. *See Forsyth*, 19 F.3d at 1537; *see also* Fed. R. Civ. P. 56(c)(3).

In light of the foregoing principles and submissions, the following facts are established for the purposes of the three pending Motions for Summary Judgment. All permissible inferences are drawn in favor of Metcalf.

## II. SUMMARY OF UNDISPUTED FACTS

Tinnitus is a ringing in the ears. (Amonette Aff. ¶ 5.)[8] "Tinnitus is a symptom of noise exposure and some medical conditions." (*Id.* ¶ 14.) Some medications can also cause tinnitus. (Schwendinger Aff. ¶¶ 17 n.2, 27 n.3, 34.) "Tinnitus may or may not accompany hearing loss." (Amonette Aff. ¶ 14.) However, tinnitus, itself, "is not the cause of hearing loss." (*Id.*) "[T]he progression of hearing loss is usually related to the cause of the hearing loss." (*Id.*) Unfortunately, hearing aids do "not prevent progression of hearing loss." (*Id.*) Nor do they treat tinnitus. (Schwendinger Aff. ¶ 34.) Rather, hearing aids "only treat[] the symptom of hearing loss." (Amonette Aff. ¶ 14.) "[A] mild hearing deficiency [does] not pose a risk to [an inmate's] safety [or] his ability to function normally in a prison environment." (*Id.*)

Metcalf has been incarcerated since 2009. (Schwendinger Aff. ¶ 7.) He has been at LVCC since 2010. (Amonette Aff. ¶ 4.) At a physical conducted on May 15, 2010, Metcalf did not complain of any tinnitus or hearing problems. (Schwendinger Aff. ¶ 7.)

In December 2010, Metcalf began taking non-steroidal anti-inflammatory medications ("NSAIDs") due to residual pain from a previous car accident. (*Id.* ¶¶ 8, 9.) Over the next six years, Metcalf began taking stronger and stronger NSAIDs. (*Id.* ¶¶ 10–17.) On May 31, 2016, Metcalf began taking Indocin, a strong NSAID that is available only by prescription. (*Id.* ¶ 17.) Indocin is known to cause tinnitus. (*Id.* ¶ 17 n.2; *cf. id.* ¶ 27 n.3 (explaining that NSAIDs in general can cause reversible tinnitus).) Metcalf continued to take Indocin intermittently for the next two years. (*Id.* ¶¶ 18, 19.)

---

[8] The Court omits references to secondary sources in citations to the summary judgment record, unless otherwise noted.

On March 20, 2018, Metcalf reported ringing in his ears for the first time. (*Id.* ¶ 20.) It was mostly in his left ear, and occurred mostly at night, but Metcalf reported no pain. (*Id.*) At that time, Metcalf also requested that the Indocin that he was taking be reduced. (*Id.*) Metcalf's Indocin prescription was reduced to a smaller dose. (*Id.* ¶ 21.)

On September 17, 2018, Metcalf complained of ringing in both ears. (*Id.* ¶ 22.) On October 17, 2018, Metcalf requested that his Indocin prescription be renewed, and it was for another six months. (*Id.* ¶ 23.)

On December 14, 2018, Metcalf was seen by Dr. Calhoun. (*Id.* ¶ 25; King Decl. ¶ 7.) He complained of tinnitus, but reported "no decrease in his hearing." (Schwendinger Aff. ¶ 25.) Metcalf denied suffering any trauma or infection. (*Id.*) A medical "[e]xamination revealed no abnormality." (*Id.*) At that time, "[p]aperwork was submitted for an audiology consult." (*Id.*)

On January 25, 2019, Metcalf was seen by an outside examiner ("Chesapeake ENT"). (*Id.* ¶ 26; King Decl. ¶ 8.) Metcalf "was diagnosed with mild bilateral hearing loss." (King Decl. ¶ 8.) Chesapeake ENT recommended that Metcalf be fitted for hearing aids. (*Id.* ¶ 8; *see* Schwendinger Aff. ¶ 26.)

On March 11, 2019, Defendant Schwendinger reviewed Metcalf's medical history and "concluded that it was very possible his long-term use of NSAIDs with the Indocin in particular, had caused the hearing issues." (Schwendinger Aff. ¶ 27 (footnote omitted).) She discontinued Metcalf's Indocin prescription and wrote him another prescription for a different pain reliever. (*Id.*)

Schwendinger also "concluded that hearing aids were not indicated . . . until [a] more conservative course of treatment (discontinuation of the strong NSAID) was first attempted to try and remove the possible cause of the problems." (*Id.*; *see also id.* ¶ 37 (explaining that the purpose in doing this was to "address the underlying cause of [Metcalf's] symptoms").) Schwendinger reasoned that, while "hearing aids do not treat ringing in ears . . . [d]iscontinuing medication known to cause this side effect does treat it." (*Id.* ¶ 34.) Schwendinger communicated her "treatment plan to [Metcalf] in writing." (*Id.* ¶ 27)

On July 26, 2019, Metcalf saw Nurse Practitioner Flowers ("NP Flowers"). (King Decl. ¶ 11.) He presented with "ongoing complaints of tinnitus" (King Decl. ¶ 11), but "the only pain reported by [Metcalf] was joint pain." (Schwendinger Aff. ¶ 28.) Metcalf "requested a renewal of the strong NSAID, Indocin at that time." (Schwendinger Aff. ¶ 28.) "NP Flowers re-prescribed Indocin and ordered a follow up appointment with an audiologist." (King Decl. ¶ 11.)

On October 3, 2019, Metcalf was re-evaluated by Chesapeake ENT. (King Decl. ¶ 12.) The audiologist again recommended hearing aids. (*Id.*) "NP Flowers requested hearing aids and referred [the matter] to billing/purchasing for approval." (*Id.*)

"[A] purchase order was submitted" in October 2019. (*Id.* ¶ 13.) "A fitting appointment was scheduled for March 11, 2020." (*Id.*) At that time, Metcalf received "bilateral hearing aids." (*Id.* ¶ 14.)

Even prior to receiving hearing aids, Metcalf never demonstrated any "problems having a conversation, hearing alarms, or responding to commands." (Stigall Aff. ¶ 6.)

Metcalf never demonstrated any issues responding to questions or conducting daily activities. (*Id.* ¶ 5.) Metcalf successfully worked as a "cadre inmate," assisting treatment counselors in the therapeutic community housing unit, and as an education aid in the carpentry program. (*Id.*) Metcalf has also participated in the prison choir, singing, and playing music on the guitar. (*Id.*) Metcalf's counselor, who has had frequent contact with him for several years, could not tell "any difference in [her] interactions and conversations with [Metcalf, since he received hearing aids], versus [four] years ago," before he started complaining of hearing issues. (*Id.* ¶¶ 5, 6.)

## III. ANALYSIS

### A. Eighth Amendment Claims

To establish an Eighth Amendment claim, an inmate must prove facts that indicate "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must prove that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must prove 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). With respect to claims of inadequate medical

treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167. A serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted)

The subjective prong requires the plaintiff to prove facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to prove facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were

14

'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). "Where a deliberate indifference claim is predicated on a delay in medical care, . . . there is no Eighth Amendment violation unless 'the delay *results* in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (quoting *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008)).

The Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with a course of treatment is insufficient to state a cognizable claim. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### 1. Serious Medical Need

The failure to provide basic corrective devices may amount to deliberate indifference to a serious medical need. *See Newman v. Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974) (noting that a prison's alleged failure to provide "eyeglasses and

prosthetic devices" may contribute to an Eighth Amendment claim). The Fourth Circuit has held that "under [the] appropriate circumstances the refusal to supply a hearing aid to a convict could constitute deliberate indifference to a serious medical need." *Large v. Wash. Cty. Det. Ctr.*, No. 90–6610, 1990 WL 153978, at *2 (4th Cir. Oct. 16, 1990). However, "not all hearing loss amounts to a serious medical condition." *Gilmore v. Hodges*, 738 F.3d 266, 276 (11th Cir. 2013).

On this record, Metcalf has failed to show a serious medical need for hearing aids based upon his mild hearing loss or his tinnitus. To begin with, the fact that Chesapeake ENT recommended that Metcalf use hearing aids is not, standing alone, a sufficient basis to transform his otherwise mild condition into a serious one. *See Large*, 1990 WL 153978, at *2 (observing that "the mere fact that one medical report opines that the claimant would benefit from a hearing aid . . . need not necessarily suffice to establish that the need is a sufficiently serious one" (internal quotation marks and punctuation omitted)). Rather, the Court must examine all "the circumstances under which the alleged refusal to provide a hearing aid occurred." *Id.* In so doing, it becomes clear that Metcalf cannot carry his burden at trial.

Metcalf has never displayed any "problems having a conversation, hearing alarms, or responding to commands." (Stigall Aff. ¶ 6.) He has always been able to respond to questions and conduct daily activities, such as working as an education aid, working as an assistant to treatment counselors, singing in the choir, and playing the guitar. (*Id.* ¶ 5.) Indeed, Metcalf's counselor, who has had frequent contact with him for several years, cannot tell "any difference in [her] interactions and conversations with [Metcalf, since he

16

received hearing aids], versus [four] years ago," before he started complaining of hearing issues. (*Id.* ¶¶ 5, 6.) Significantly, the testimony of Dr. Amonette indicates that Metcalf's "mild hearing deficiency [does] not pose a risk to [his] safety [or] his ability to function normally in a prison environment." (Amonette Aff. ¶ 14.)

As the United States Court of Appeals for the Eleventh Circuit has observed, "if a plaintiff can carry on a normal conversation and hear and follow directions without the use of a hearing aid, a court would be hard pressed to classify the plaintiff's impairment as a serious medical need." *Gilmore*, 738 F.3d at 276–277 (citations and internal quotation marks omitted). Here, it is clear that with or without hearing aids Metcalf can hear and follow directions and carry on a normal conversation. Thus, he has failed to demonstrate that he has a serious medical need for hearing aids based on his mild hearing loss. *See Chacon v. Ofogh*, No. 7:08CV00046, 2008 WL 4146142, at *4 (W.D. Va. Sept. 8, 2008) (observing that where plaintiff "was able to carry on a normal conversation . . . [it] suggests . . . that [his] hearing is not so impaired as to rise to the level of a serious medical need" (internal quotation marks omitted)); *Patterson v. Smith*, No. 1:20CV202, 2020 WL 6928614, at *8 n.12 (E.D. Va. Nov. 24, 2020) (noting that where there is no "impairment in communication" there is a "medical basis for not approving the *recommended* hearing aids" suggested by an outside audiologist (internal quotation marks and citation omitted)).

Similarly, Metcalf has failed to submit admissible evidence to show that his tinnitus creates a serious medical need for hearing aids. *Cf. Davidson v. Scully*, 155 F. Supp. 2d 77, 84 (S.D.N.Y. 2001) (holding that a reasonable juror could not "find that

tinnitus is a serious medical need under the Eighth Amendment," because, *inter alia*, it "does not produce pain at all" (internal quotation marks omitted)). To the contrary, the record establishes that hearing aids "only treat[] the symptom of hearing loss." (Amonette Aff. ¶ 14.) They do not treat tinnitus (Schwendinger Aff. ¶ 34), nor does tinnitus cause hearing loss (Amonette Aff. ¶ 14). Illustrating this point, the United States Court of Appeals for the Fifth Circuit has found that where a plaintiff's hearing is "functional," as Metcalf's appears to be, the mere fact that the plaintiff also has tinnitus does not necessitate the provision of hearing aids. *See Cooper v. Johnson*, 353 F. App'x 965, 967–68 (5th Cir. 2009) (affirming summary judgment where defendants "refused to give [plaintiff] a hearing aid to relieve [his] tinnitus").

Metcalf's failure to point to any admissible evidence to establish that he had a serious medical need for hearing aids renders all of his remaining Eighth Amendment claims (*i.e.*, Claims One, Two (a), Two (b), Three, and Five) meritless. For that reason alone, all of Metcalf's Eighth Amendment claims may be dismissed. However, even if the Court were to assume, *arguendo*, that Metcalf had demonstrated a serious medical need for hearing aids, which he has not, his Eighth Amendment claims would nevertheless still be lacking, as discussed below.

### 2. Defendant Schwendinger (Claim One)

In Claim One, Metcalf alleges that Defendant Schwendinger displayed deliberate indifference to Metcalf's serious medical need in violation of the Eighth Amendment by denying him hearing aids, despite an outside audiologist's recommendation to the contrary. (ECF No. 10, at 15–17.) Claim One fails for multiple reasons.

First, the right to medical treatment is limited to that which is medically necessary and not "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Metcalf has failed to point to any admissible evidence to demonstrate that any medical provider determined that he had a medical need for hearing aids. To the contrary, Chesapeake ENT merely recommended that Metcalf be provided hearing aids. *See Hudson*, 503 U.S. at 9 (citation omitted) (explaining that prisoners are not entitled to the medical treatment of their choosing). Thus, Metcalf has failed to show that hearing aids were medically necessary, as opposed to merely desirable.

Second, an inmate's disagreement with medical personnel with respect to a course of treatment is generally insufficient to state a constitutional claim. *Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6). In Claim One, Metcalf clearly articulates a disagreement concerning his course of treatment. Metcalf wanted hearing aids right away, and Defendant Schwendinger wanted to conduct additional diagnostics to attempt to identify the root cause of Metcalf's issues. (Schwendinger Aff. ¶¶ 27, 34, 36). Since Metcalf had been taking strong NSAIDs, which are known to cause tinnitus, for several years (*id.* ¶¶ 17 n.2, 27 n.3, 34), it was not unreasonable for Defendant Schwendinger to exercise her professional medical judgment and attempt to rule out the obvious possibility that the medicine that Metcalf was taking caused or at least contributed to the issues he complained about prior to proceeding with the hearing aids requisition process.

Similarly, the fact that Chesapeake ENT may have recommended a different course of treatment does not change the analysis. *See Jackson v. Lightsey*, 775 F.3d 170, 178–79 (4th Cir. 2014) (holding that plaintiff failed to show deliberate indifference where

19

non-specialist prison medical provider diagnosed plaintiff with a less serious condition than outside specialist and deviated from the treatment recommended by said specialist). Simply put, disagreements among medical providers about a patient's care do not usually rise to the level of deliberate indifference. *See Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1142 (10th Cir. 2005) (observing that "a medical difference of opinion . . . is not actionable under the Eight Amendment"); *see also Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (finding that a difference of opinion between providers is insufficient to show deliberate indifference); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (noting that a provider is not indifferent to a plaintiff's needs simply by reaching a different diagnosis than another provider). In this instance, even though Chesapeake ENT's recommendation may align with Metcalf's view of the proper level of treatment, at bottom, Metcalf's claim against Defendant Schwendinger is still "essentially" nothing more than a dispute with his prison medical provider over the proper level of care. *See Lightsey*, 775 F.3d at 178 (citations omitted).[9]

Finally, Metcalf's claim is one for delay of medical treatment, not outright denial of medical treatment, because he ultimately received hearing aids. Thus, he was required to show that "the delay result[ed] in some substantial harm" to him, such as a noticeable exacerbation of his symptoms. *Formica*, 739 F. App'x at 755 (emphasis and citations omitted). Metcalf has failed to point to any admissible evidence to support such a

---

[9] It is unclear from the record whether the providers at Chesapeake ENT knew of Metcalf's long history of taking strong NSAIDs, or whether they factored in the possibility that the medicines he had been taking may have contributed to his underlying conditions prior to making their recommendation. Metcalf failed to submit an affidavit from anyone at Chesapeake ENT. In light of this, the Court must be cognizant of the possibility that the recommendation from Chesapeake ENT may have been based on an incomplete medical history for Metcalf.

conclusion. Rather, the record evidence indicates the opposite is true. Tinnitus does not cause hearing loss. (Amonette Aff. ¶ 14.) Nor do hearing aids "prevent progression of hearing loss" (*id.*) or treat tinnitus (Schwendinger Aff. ¶ 34). Thus, Metcalf has failed to show that any delay he may have experienced in obtaining hearing aids resulted in a worsening of his condition. *Formica*, 739 F. App'x at 755.

Even if Metcalf could establish that he had a serious medical need for hearing aids, he has failed to show through admissible evidence that Defendant Schwendinger was deliberately indifferent to that need. Accordingly, Claim One will be dismissed.

### 3. Defendant Breckon (Claim Two)

In Claim Two, Metcalf alleges that Defendant Breckon displayed deliberate indifference to Metcalf's serious medical need in violation of the Eighth Amendment by: (a) determining that his grievance was unfounded; and, (b) failing to supervise his subordinates at LVCC. (ECF No. 10, at 15, 18–20.) Assuming, *arguendo*, that Metcalf could establish that he had a serious medical need for hearing aids, which he has not on this record, Claim Two would nevertheless fail, as discussed below.

As an initial matter, Defendant Breckon argues that he cannot be held liable under a theory of *respondeat superior*. (ECF No. 70, at 7–8.) While Defendant Breckon correctly states a very general proposition of law, *see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citations omitted), the analysis needed in this instance is far more complicated than his cursory treatment of the issue suggests. Because Defendant

Breckon gave this argument short shrift in his brief, he is not entitled to summary judgment on this basis.[10]

On the other hand, Defendant Breckon was entitled to rely on the medical judgment of Defendant Schwendinger in determining that Metcalf's grievance was unfounded. *See Miltier*, 896 F.2d at 854–55 (holding that non-medical prison officials were "entitled to rely upon [the prison] health care providers' expertise"); *Iko*, 535 F.3d at 242 (citations omitted) (observing that a "prison official can generally rely on his medical staff's examinations and diagnoses"). Defendant Schwendinger made a medical decision that further diagnostics were necessary to determine the root cause of Metcalf's issues. It was not unreasonable for Defendant Breckon to rely upon that medical decision when he denied the grievance.

Moreover, as discussed above, Defendant Schwendinger was not deliberately indifferent to Metcalf's needs. *See* Section III.A.2, *supra*. Thus, any Eighth Amendment claim of liability against Defendant Breckon based upon Defendant Schwendinger's

---

[10] Breckon may well have been successful in this argument had he thoroughly briefed the issue. Inmates have no constitutional right to a grievance. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Thus, Metcalf's allegation that Breckon violated his rights by denying his grievance would seem meritless. *See George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) (noting that "[r]uling against a prisoner does not cause or contribute to [a constitutional] violation"); *see also DePaola v. Ray*, No. 7:12CV00139, 2013 WL4451236, at *8 (W.D. Va. July 22, 2013) (citation omitted) (observing that "a supervisor's after–the–fact denial of a grievance falls short of establishing § 1983 liability"). Further, Metcalf fails to explain, and the Court fails to discern, how his grievance placed Breckon on notice of an excessive risk of harm to his health, so as to require Breckon to take action. *See Vance v. Peters*, 97 F.3d 987, 993–94 (7th Cir. 1996) (observing that a prison official may be liable if he receives a written communication from an inmate that puts him on notice of "an excessive risk to inmate health or safety" and he fails to respond appropriately (internal quotation marks and citations omitted)). However, on this record, Breckon's conclusory statement that he cannot be held liable for the actions of his subordinates is simply insufficient. Nevertheless, as discussed below, Breckon is entitled to summary judgment on other grounds.

actions lacks a basis in both fact and law. *See Iqbal*, 556 U.S. at 676. Accordingly, Claim Two (a) will be dismissed.

In Claim Two (b), Metcalf insists that Defendant Breckon failed to supervise his subordinates at the LVCC. However, prison supervisors can be held liable "only for their personal wrongdoing or supervisory actions that violate[] constitutional norms." *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). On this record, Metcalf has failed to make such a showing.

As discussed above, Metcalf's disagreement with prison medical staff over the appropriate course of treatment does not constitute deliberate indifference. Further, Defendant Breckon was justified in relying upon the opinions of LVCC's medical providers. Finally, Metcalf has failed to show that Defendant Schwendinger was deliberately indifferent. Thus, even if Metcalf could establish a serious medical need, which he has not done, any claim of supervisory liability based upon her medical decisions is unfounded. Accordingly, Claim Two (b) will be dismissed.

### 4. Defendant GEO (Claim Three)

In Claim Three, Metcalf alleges that Defendant GEO "is legally responsible for the faults and misconduct of their employees under the doctrine of *respondeat superior*," (ECF No. 10, at 20–21), and "is vicariously liable" for the alleged Eighth Amendment violations of its employees (*id.* at 21). GEO counters that it cannot be held liable under a theory of *respondeat superior*. (ECF No. 70, at 7–8.) However, like Defendant Breckon, GEO's argument concerning the doctrine of *respondeat superior* is terse and fails to

include any caselaw applying the doctrine when a private corporation, such a GEO, is involved. (*Id.*) As such, GEO is not entitled to summary judgment on this basis.[11]

Nevertheless, GEO is entitled to summary judgment because Metcalf failed to establish a serious medical need for hearing aids, Metcalf's disagreement with the prison medical provider's course of treatment does not constitute deliberate indifference, and because GEO is entitled to rely upon the professional judgments of the prison medical providers. Finally, Metcalf's failure to demonstrate that Defendant Schwendinger was deliberately indifferent to a serious medical need renders his claims of vicarious liability based upon her conduct meritless. Accordingly, Claim Three will be dismissed.

### 5. Defendant Scott (Claim Five)

In Claim Five, Metcalf alleges that Defendant Scott is liable because she "signed . . . O.P. 750.3 into effect on 6/27/17." (ECF No. 10, at 24.) According to Metcalf, this policy states that "[g]enerally, offenders who can hear well enough to carry on a conversation will not be issued hearing aids by the DOC." (*Id.* at 23–24.) Metcalf maintains that O.P. 750.3 gives "rise to deliberate indifference," and prevents offenders, such as himself, "from receiving adequate medical care." (*Id.* at 24.)

Metcalf has failed to point to any admissible evidence to indicate that O.P. 750.3 caused or contributed to his mild hearing loss or alleged tinnitus. Tinnitus is caused by

---

[11] A private corporation cannot be held liable under § 1983 "for torts committed by [its employees] when such liability is predicated upon a theory of respondeat superior." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Rather, "a private corporation is liable under § 1983 only when an official policy or custom of the Corporation causes the alleged deprivation of federal rights." *Id.* (citations omitted). A plaintiff must, "identify the offending [corporate] policy [or custom] with precision." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). Here, it appears that Metcalf has failed to prove through admissible evidence that any such official policy or custom existed. However, because GEO did not properly raise this argument, it is not entitled to summary judgment on this basis.

noise exposure, some medical conditions, and some medications. (Amonette Aff. ¶ 14; Schwendinger Aff. ¶¶ 17, n.2, 27 n.3, 34.) It is a "symptom" of an underlying condition. (Amonette Aff. ¶ 14.) On this record, it is unclear exactly what caused Metcalf's tinnitus. Defendant Schwendinger attempted to rule out the medicine that Metcalf was taking as a potential cause for his tinnitus, but, beyond that, none of the parties have definitively established what caused Metcalf's tinnitus. Similarly, none of the parties have definitively established what caused Metcalf's mild hearing loss.

It is clear, however, that O.P. 750.3 did not play a significant role in the decision to deny Metcalf hearing aids. Defendant Schwendinger made that medical judgment call based on her belief that the medicine that Metcalf had been taking for many years could have caused his alleged tinnitus, and her desire to rule that out as a possibility before proceeding to more drastic remedies. (Schwendinger Aff. ¶¶ 27, 34, 36). O.P. 750.3 does not appear to have factored into her decision to require more diagnostic evaluation in the slightest.

However, even if Defendant Schwendinger had based her decision, at least in part, on O.P. 750.3, as discussed above, she was not deliberately indifferent to Metcalf's needs. *See* Section III.A.2, *supra*. Moreover, the record clearly indicates that any delay Metcalf may have experienced in receiving hearing aids did not cause or otherwise exacerbate his condition. *See id.* Simply put, tinnitus does not cause hearing loss, nor do hearing aids "prevent progression of hearing loss" (Amonette Aff. ¶ 14), nor do they treat tinnitus (Schwendinger Aff. ¶ 34). Rather, "the progression of hearing loss is usually related to the cause of the hearing loss" (Amonette Aff. ¶ 14), which, on this record,

remains unclear. In any event, Metcalf has failed to demonstrate that O.P. 750.3 caused or contributed to his condition. Therefore, Defendant Scott cannot be held liable for signing O.P. 750.3. Accordingly, Claim Five will be dismissed.

## B. ADA Claims

In Claims Six through Ten, Metcalf alleges that the Defendants violated his rights under Title II of the ADA by failing to provide him with hearing aids sooner than they actually did. (ECF No. 10, at 27–28.) Metcalf purports to sue each Defendant in both their individual capacity and their official capacity. (*See* ECF No. 10, at 4.)

### 1. Individual Capacity Claims

Defendants Schwendinger and Breckon argue that they cannot be held liable under the ADA in their individual capacity. (ECF No. 70, at 2, 11–12; ECF No. 77, at 3, 18.) By Memorandum Opinion and Order entered on June 10, 2021, the Court dismissed Claims Nine and Ten against Defendants Herrick and Scott to the extent that they were styled as individual capacity claims, because the ADA does not authorize plaintiffs to bring such claims. (ECF No. 88, at 17; ECF No. 89, at 1.) For the reasons stated in the June 10, 2021 Memorandum Opinion and Order, the Court will also dismiss Claims Six, Seven (a), and Seven (b) against Defendants Schwendinger and Breckon, to the extent they are styled as individual capacity claims. *See Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("Title II of the ADA . . . [does not] provide[] for individual capacity suits against state officials."); *see also Barnes v. Young*, 565 F.

26

App'x 272, 273 (4th Cir. 2014) (citation omitted).  The Court turns now to the remaining official capacity claims contained in Claims Six through Ten.[12]

### 2. Medical Treatment Disputes

The ADA "was never intended to apply to decisions involving . . . medical treatment." *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) (citations omitted); *see also Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1143–44 (10th Cir. 2005) (observing that "purely medical decisions . . . do not ordinarily fall within the scope of the ADA"); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (citations omitted) (concluding that ADA claims "cannot be based on medical treatment decisions").

Indeed, the ADA is not a vehicle for disgruntled patients to challenge the medical judgments of their healthcare providers. *See Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 285 (1st Cir. 2006) (noting that "[w]hen the decision being challenged is simply a reasoned medical judgment with which the patient disagrees," the ADA does not apply (internal quotation marks and citation omitted)).  Certainly, "[t]he ADA does not create a remedy for medical malpractice." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).  To the contrary, the ADA "is not violated by a prison simply failing to attend to the medical needs of its disabled prisoners." *Spencer v. Easter*, 109 F. App'x 571, 573 (4th Cir. 2004) (quoting *Bryant*, 84 F.3d at 249).

---

[12] Despite his statement that "[e]ach defendant is being sued individually and in his/her official capacity" (*see* ECF No. 10, at 4), Metcalf fails to explain, and the Court fails to discern, how GEO, a private corporation, can be sued in both an individual and official capacity.  Thus, the Court construes Claim Eight as an official capacity claim only.

In this instance, all of Metcalf's ADA claims trace their roots back to the medical decision made by Defendant Schwendinger to conduct further diagnostic evaluation of Metcalf before providing him with hearing aids. In each instance, his arguments are plainly based on the premise that the staff at LVCC "simply fail[ed] to attend to [his] medical needs." *Id.* (citation omitted). At bottom, Metcalf is attempting to use the ADA as a backdoor to attack the medical decisions made at LVCC, which is impermissible. *See id.* Thus, Metcalf's remaining ADA claims must be dismissed.

However, even if one or more of Metcalf's remaining ADA claims was based on something other than an underlying dispute regarding the appropriate medical treatment, as discussed below, his claims would nevertheless still fail because he has not established through admissible facts at least one of the essential elements of an ADA claim.

### 3. Proving a Disability

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (West 2022). A state prison is a "public entity" for purposes of Title II of the ADA. *See United States v. Georgia*, 546 U.S. 151, 154 (2006) (citation omitted).[13] The Fourth Circuit has held that:

> In general, a plaintiff seeking recovery for violation of [the ADA] must allege that (1) []he has a disability, (2) []he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) []he was

---

[13] In *United States v. Georgia*, the Supreme Court held that Title II of the ADA constituted a valid abrogation of a state's sovereign immunity and that it "creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." 546 U.S. at 159 (emphasis in original).

> excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of h[is] disability.

*Constantine v. George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (citations omitted).

> Insofar as the ADA is concerned, a "disability" is defined as:
>
> **(A)** a physical or mental impairment that substantially limits one of more major life activities of [an] individual;
>
> **(B)** a record of such an impairment; or
>
> **(C)** being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1)(A)–(C) (West 2022).  Hearing, speaking, and communicating are "major life activities" protected by the statute.  42 U.S.C. § 12102(2)(A) (West 2022).

Metcalf has failed to show through admissible evidence that either his tinnitus or his mild hearing loss has resulted in "substantial limits" on his ability to hear, speak, or communicate.  *See Santiago Clemente v. Exec. Airlines, Inc.* 213 F.3d 25, 31 (1st Cir. 2000) (noting that "a court must determine on a case-by-case basis whether an individual has offered sufficient evidence that the extent of the limitation in terms of [her] own experience . . . is substantial" (alteration in original) (internal quotation marks and citation omitted)).  To the contrary, Metcalf's "mild hearing deficiency [does] not pose a risk to [his] safety [or] his ability to function normally in a prison environment." (Amonette Aff. ¶ 14.)

To be clear, Metcalf has never displayed any "problems having a conversation, hearing alarms, or responding to commands." (Stigall Aff. ¶ 6.)  Rather, he has always been able to respond to questions and conduct daily activities, such as working as an

education aid, working as an assistant to treatment counselors, singing in the choir, and playing the guitar. (*Id.* ¶ 5.) Indeed, Metcalf's current ability to hear, speak, and communicate with hearing aids is essentially the same as it was four years ago, before he started complaining of hearing issues. (*Id.* ¶¶ 5, 6.)

Consequently, Metcalf has failed to establish that he has a "disability" within the meaning of the ADA. *Cf. Santiago Clemente*, 213 F.3d at 31–32 (concluding that there was no evidence that plaintiff's "moderate to severe hearing loss" had "a *severe* impact on her functional ability to hear" or speak); *Smith v. Masterson*, 538 F. Supp. 2d 653, 658–59 (S.D.N.Y. 2008) (concluding that plaintiff's "mild to moderate" hearing loss was not "a qualifying disability" under the ADA (internal quotation marks omitted)). Thus, even if the Court found that one or more of Metcalf's remaining official capacity claims was not an impermissible challenge to the medical treatment that he received at LVCC, they would not survive summary judgment because Metcalf has not demonstrated that he is disabled for purposes of the ADA. Accordingly, Claims Six, Seven (a), Seven (b), Eight, Nine (a), Nine (b), and Ten will be dismissed.

## IV. CONCLUSION

For the above reasons, the Motions for Summary Judgment (ECF Nos. 69, 76, 98) will be granted. Claims One, Two (a), Two (b), Three, Five, Six, Seven (a), Seven (b), Eight, Nine (a), Nine (b), and Ten will be dismissed. The action will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

/s/
_____
Henry E. Hudson
Senior United States District Judge

Date: February 24, 2022
Richmond, Virginia